# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSE MANUEL CHAVEZ, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 10 C 264 |
| v. ) | |
| ) | Hon. Marvin E. Aspen |
| DON STOLTZNER MASON ) | |
| CONTRACTOR, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

      Plaintiffs Jose Manuel Chavez, et al., filed a two-count complaint against Defendants Don Stoltzner Mason Contractor, Inc. ("Don Stoltzner Mason"), et al., in Illinois state court, alleging violations of the Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.* ("IMWL") and the Fair Labor Standards Act, 28 U.S.C. § 201 *et seq.* ("FLSA"). Defendants removed the case to federal court. Presently before us is Defendants' motion to dismiss or compel arbitration. For the reasons discussed below, we deny the motion.

I.    BACKGROUND

      Plaintiffs are hourly construction workers who performed work for Defendant Don Stoltzner Mason, a masonry contractor; the remaining defendants are officers of Don Stoltzner Mason. (Resp. at 2.) Plaintiffs allege that Defendants failed to pay Plaintiffs time-and-a-half overtime for each hour over forty worked per week, as required by the IMWL and FLSA. (*See* Compl.) According to the complaint, after Plaintiffs submitted timesheets to Defendants, Defendants billed clients based on the hours listed on the timesheets but did not pay Plaintiffs for

all those hours. (Compl. ¶ 11.) Plaintiffs state, essentially, that their claims can be resolved simply by comparing their timesheets, presumably in Defendants' records, with their pay stubs. (*See* Resp. at 6.)

Defendants argue that this case is preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), because the employment relationships between Plaintiffs and Defendants are governed by collective bargaining agreements ("CBAs"). (Mem. at 5–9.) As discussed below, the LMRA provides for federal jurisdiction over labor disputes governed by CBAs and has been interpreted as preempting state law claims that arise from or require interpretation of a CBA. Defendants argue that although Plaintiffs' claims are based on the IMWL and FLSA and the complaint does not reference the governing CBAs, resolving the claims necessarily involves interpreting the CBAs and thus the claims are preempted by the LMRA. According to Defendants, Plaintiffs must go through the arbitration process outlined in the CBAs to resolve their grievances. In addition, Defendants argue that Plaintiffs' claims are time-barred. (Mem. at 9–10; Reply at 7–8.)

II. STANDARD OF REVIEW

Defendants appear to proceed under either Rule 12(b)(1) or 12(b)(6). The purpose of a motion to dismiss under either rule is to test the sufficiency of the complaint, not to decide the merits of the case. Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. In reviewing a 12(b)(1) motion, the court may look beyond the complaint to pertinent evidence submitted by the parties. *See United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on

its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *see Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776–77 (7th Cir. 2007). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002).

III. ANALYSIS

Defendants raise two arguments in support of their motion. First, Defendants argue that Plaintiffs' IMWL and FLSA claims are preempted by the LMRA and the governing CBAs.[1] Second, Defendants argue that Plaintiffs' FLSA claim is barred or at least limited by the applicable statute of limitations. We address each argument.

A. Preemption

1. Illinois Minimum Wage Law Claim

Section 301(a) of the LMRA states: "Suits for violation of contracts between an employer and a labor organization representing employees . . . , may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a). This provision has been interpreted as having a preemptive effect on certain state claims brought by individual employees against their employers. The Seventh Circuit, en banc, explained the history of this preemptive effect:

---

[1] Three CBAs appear to be relevant in this case, each governing different individual plaintiffs. (*See* Reply at 4.) Each CBA sets terms for the calculation of wage rates and hours. (*See* Def. Exs. 1-2, 1-3, and A.) Although the provisions within these agreements vary, the differences are not relevant for present purposes. Consequently, we refer to the agreements collectively throughout the opinion.

3

> The preemptive effect of § 301 was first explored in *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S. Ct. 571 (1962), a case involving a claim for violating a collective bargaining agreement. The guiding principle behind § 301 preemption was that a contract should not have different meanings under federal law and the laws of various states. Today, it is well-understood that a claim for breach of a collective bargaining agreement is preempted. But in other cases, not based directly on a CBA, the scope of preemption continues to cause some bewilderment. . . . What has become clear is that preemption can extend beyond contract disputes to other state law claims if resolution of those claims is sufficiently dependent on an interpretation of a CBA.

*In re Bentz Metal Products Co.*, 253 F.3d 283, 285–86 (7th Cir. 2001) (en banc). Although federal preemption is usually a purely legal issue, preemption under § 301 requires a case by case, fact-based analysis. *See id*. at 285. In this case, Plaintiffs do not explicitly allege that Defendants breached the CBAs. However, § 301 will nevertheless preempt Plaintiffs' IMWL claim if it arises from or is sufficiently dependent on an interpretation of the governing CBAs. Defendants appear to argue for both grounds.

Defendants first argue, seemingly, that Plaintiffs' IMWL claim is really a claim to enforce rights created in the CBAs, and thus that Plaintiffs' claim arises from the CBAs. To the extent Defendants make this argument, it is unavailing. Defendants state, without supporting federal authority, that the overtime provisions contained in the CBAs "provide a comprehensive framework for wages and hours, well beyond the minimums required by the IMWL, and therefore supplant them under Section 301 of the LMRA." (Mem. at 4.) Defendants seem to assume that because the overtime rights provided by the CBAs overlap with the IMWL overtime rights Plaintiffs seek to enforce, the CBAs somehow automatically displace the IMWL. We disagree.

In *Caterpillar Inc. v. Williams*, plaintiffs brought state breach of contract claims to enforce rights created in individual employment contracts. 482 U.S. 386, 390, 107 S. Ct. 2425,

2428 (1987). In response, the employer asserted that any rights created by individual employment contracts were "merged into and superceded by" the governing CBA, and that by seeking to enforce the individual contracts, plaintiffs were in reality seeking to enforce rights found in the CBA, subject to § 301. *Id*. The Supreme Court rejected this argument, finding that rights created by the CBA and individual contracts were independent. According to the Court, "[i]t is true that respondents . . . possessed substantial rights under the collective agreement, and could have brought suit under § 301. As masters of the complaint, however, they chose not to do so." *Id*. at 2431, 394–95. The Court continued: "[I]t would be inconsistent with congressional intent under [§ 301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id*. (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212, 105 S. Ct. 1904, 1912 (1985)). In other words, state-created labor rights may exist independent of a governing CBA, and a plaintiff may choose to enforce solely those independent state-created rights and forego enforcement of CBA-created rights. Plaintiffs in this case have done so.

The IMWL guarantees Illinois workers a right to time-and-a-half overtime for every hour worked over forty hours in a single week. Plaintiffs are suing to enforce this statutorily created right. Although the governing CBAs also create overtime rights, and in fact create rights greater than those created by the IMWL, Plaintiffs have not sought to enforce the rights created by the CBAs. Instead, they have chosen to forego certain claims in favor of others. Defendants' assertion that Plaintiffs are in reality seeking to enforce the CBAs is wrong; Plaintiffs' claim arises from the IMWL, not the CBAs.

But Plaintiffs' IMWL claim may still be preempted by § 301 if its resolution requires interpretation of the CBAs. *Lingle*, 486 U.S. at 413, 108 S. Ct. at 1885. Defendants argue that Plaintiffs' IMWL claim requires interpretation of the CBAs because in order to determine if Plaintiffs were paid their statutorily guaranteed time-and-a-half overtime, we would need to first determine the applicable wage rate, as defined in the CBAs, and the amount of hours Plaintiffs worked, discounting for any time excluded from "work" under the CBAs. (Reply at 5–6.) According to Defendants, calculating whether Plaintiffs are owed money based on the applicable wage rates and hours definition requires us to interpret the CBAs. As primary support, Defendants quote dicta from *In re Bentz*: "If the entitlement to wages (or other employee pay), or the amount due were at issue, the CBA would control; almost certainly, interpretation of the agreement would be necessary, and would be subject to the arbitration proceedings in the contract." 253 F.3d at 289 (quoted in Mem. at 6). While at first blush this statement appears instructive in our case, the Seventh Circuit has more recently clarified its position.

In *Wisconsin Central v. Shannon*, an employer sought a declaratory judgment that the Railway Labor Act ("RLA")[2] and applicable CBAs would preempt its employees from enforcing the overtime provisions of the IMWL. 539 F.3d 751, 755–56 (7th Cir. 2008). The relevant CBAs appear to have been similar to those in this case, providing terms for calculation of wage rates and hours. *See id*. at 758 n.3. The district court found for the employer, "reasoning that determining whether [the employer] had violated [the IMWL] would require interpreting the applicable CBAs." *Id.* at 756. The district court "observ[ed] that computing overtime under

---

[2] The preemption provision in the RLA is substantially identical to the preemption provision of the NLRA, and precedent interpreting one is applicable when interpreting the other. *See Hawaiian Airlines v. Norris*, 512 U.S. 246, 260, 114 S. Ct. 2239 (1994).

Illinois law requires ascertaining the number of 'hours worked' and the 'regular rate of pay'; figures that could only be calculated by turning to the CBAs, and were not so clear under those agreements that they could be determined through a 'mere glance' without interpretation." *Id.* at 758. The district court's reasoning was nearly identical to the reasoning put forth by Defendants in our case.

The Seventh Circuit reversed, holding that the district court lacked jurisdiction because the claim was not ripe for adjudication. *Id.* at 761. The Seventh Circuit stated that the district court had "incorrectly" relied on the above-quoted dicta from *In re Bentz*, and emphasized that for an entitlement to wages or the amount due to be "at issue," and therefore for § 301 preemption to apply, there must be an actual dispute between the parties as to the interpretation of the relevant terms of the CBA. *Id.* at 760. Section 301 preemption would not apply, for example, "(1) when the particular contractual provision is so clear as to preclude all possible dispute over its meaning; (2) if the parties do not dispute the interpretation of the relevant CBA provisions; or (3) where reference to the CBA is only necessary for computing damages." *Id.* at 758 (internal quotations and citations omitted). In *Wisconsin Central*, the dispute was not yet developed enough to decide whether preemption would bar IMWL claims. The court reasoned:

> At this stage of the proceedings, all that is clear is that the CBAs will have to be consulted to calculate the "hours worked" and "regular rate" of pay under the [IMWL]. While this information was sufficient for the district court to determine that computing these values 'requires interpretation and application of various provisions contained in the CBAs,' the parties have not yet staked out a position for the record as to what these CBA provisions mean, making it impossible to determine at this stage of the proceedings whether a disagreement will exist that will require an arbitrator, under the terms of the RLA, to engage in this CBA interpretation.

*Id.* at 760.

7

Defendants herein make essentially the same argument that was rejected in *Wisconsin Central*. They identify CBA provisions that govern rates of pay and hours and claim that these provisions must be interpreted to resolve the IMWL claim. But like the employer in *Wisconsin Central*, Defendants do not identify any disagreement with Plaintiffs over the meaning of these provisions. While this case does involve a live dispute brought by an employee for violation of the IMWL, and thus is procedurally distinct from the declaratory judgment action in *Wisconsin Central* and is not, as such, unripe for adjudication, the reasoning of *Wisconsin Central* is directly applicable to the instant motion to dismiss. Our case is ripe, but it would be premature for us to find that Plaintiffs' IMWL claim requires interpretation of the CBAs when we do not yet know whether any provisions of the CBAs are in dispute. As stated earlier, § 301 preemption is founded on the principle that CBAs should be uniformly interpreted through the use of federal interpretive rules. If the meaning of a CBA is undisputed, there is no risk of divergent interpretations and no reason for § 301 preemption. Here, the parties have not yet staked out positions on the meaning of the relevant CBA provisions, and thus we cannot determine if a real dispute exists over their meaning. Accordingly, Defendants' motion to dismiss Count I as preempted by the LMRA is premature.

2. Fair Labor Standards Act Claim

The FLSA also protects an employee's right to overtime wages, and Plaintiffs allege that Defendants violated the FLSA by failing to pay Plaintiffs for all hours worked. (*See* Compl., Count II.) Defendants counter that Plaintiffs' FLSA claim is governed by the CBAs, and thus subject to the arbitration provision of the CBAs. (Mem. at 8–9; Reply at 8–9.) Essentially, Defendants claim that when a CBA protects all rights guaranteed by the FLSA, the CBA

effectively displaces the FLSA. As support, Defendants cite *Leahy v. City of Chicago*, 96 F.3d 228 (7th Cir. 1996) and *Freundt v. Allied Tube & Conduit Corp.*, No. 06 C 2210, 2007 WL 4219417 (N.D. Ill. Nov. 29, 2007). While these cases could be read to support Defendants' argument, they are no longer good authority as such. *See Jonites v. Exelon Corp.*, 522 F.3d 721, 724–25 (7th Cir. 2008).

In *Leahy*, plaintiffs sued under the FLSA to recover overtime wages for unpaid lunch hours. 92 F.3d at 230–31. Plaintiffs claimed that various restrictions on their lunch breaks forced them to occasionally work during lunch, and that because of this they were effectively always working "on call" during lunch and should accordingly be paid. *Id*. The Seventh Circuit decided that because the FLSA guaranteed overtime for hours worked, as did the CBA, and the CBA also defined "work," the determination of whether "on call" lunch hours should be considered work was best left to an arbitrator. *Id*. at 232. The dissent characterized the majority as ruling that CBAs covering the rights guaranteed by the FLSA effectively preempt FLSA claims. *Id*. at 235.

In *Fruendt*, the district court followed the dissent's reading of *Leahy* and dismissed plaintiff's FLSA claim because its resolution would have required interpreting a CBA that comported with the FLSA. 2007 WL 4219417, at * 3–4. In support of this proposition, the district court cited *Leahy* and another district court case, *Jonites v. Exelon Corp.*, No. 05 C 4234, 2007 WL 2198380 (N.D. Ill. July 20, 2007). *Id*. at *3. Defendants now advance an argument based on the reading of *Leahy* identified in its dissent and relied on in *Fruendt*.

After the district court's decision in *Fruendt*, however, the Seventh Circuit decided an appeal in *Jonites*—the other case relied on in *Fruendt*—and specifically rejected the reading of

9

*Leahy* advanced above.[3] *See Jonites*, 522 F.3d at 724–25. The court emphasized that rights guaranteed by the FLSA carry with them a right of judicial enforcement that cannot be waived in a CBA. *Id.* In other words, although a CBA may require wage and hour disputes to be resolved through arbitration, an individual employee, simply by virtue of being subject to the CBA, cannot be considered to have waived her right to a judicial forum for enforcing FLSA wage and hour rights. The court stated that the view that CBAs preempt the FLSA is "unacceptable." *Id.* at 724 (citing *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 101 S. Ct. 1437 (1981)). Because Defendants advance this very argument, Defendants' motion fails.

B. Statute of Limitations

Finally, Defendants argue that Plaintiffs' FLSA claim is barred, or at least limited, by the applicable statute of limitations. (Mem. at 9–10; Reply at 7–8.) The FLSA has a two-year statute of limitations that is extended to three-years for willful violations. 29 U.S.C. § 255(a). Defendants state that part or all of Plaintiffs' FLSA claim is barred as accruing outside the limitations period. While Plaintiffs appear to concede this point, they argue that the statute of limitations should be tolled because Defendants failed to post notice of their FLSA rights, as is required by 29 C.F.R. § 516.4. (Resp. at 8.) This tolling theory has been endorsed by at least two colleagues in this district, and we adopt it here. *See Cisneros v. Jinny Beauty Supply Co., Inc.*, No. 03 C 1453, 2004 WL 524482, at *1 (N.D. Ill. Feb. 6, 2004); *Cortez v. Medina's Landscaping*, No. 00 C 6320, 2002 WL 31175471, at *1–6 (N.D. Ill. Sept. 30, 2002) (weighing

---

[3] After rejecting this reading of *Leahy*, the court in *Jonites* went on to endorse the outcome in *Leahy* and to affirm the district court's grant of summary judgment, stating "*Leahy*, though, was a special case, as is this case . . . ." *Id.* at 725. Defendants have not argued that this case should also be considered "special," nor is there appropriate factual development in the record to support such argument.

competing authority from other circuits and adopting the *Bonham* rule from the Third Circuit).
Because Plaintiffs have alleged that Defendants failed to post notice as required by 29 C.F.R.
§ 516.4, (Compl. ¶ 26(D)), and at this time Defendants have made no showing of when Plaintiffs
acquired general knowledge of these rights,[4] Defendants' statute of limitations argument fails.
Defendants may raise this argument later if they can establish that Plaintiffs acquired knowledge
of their FLSA rights outside the statute of limitations period.[5]

III.   CONCLUSION

For the reasons stated above, we deny Defendants' motion to dismiss or stay pending arbitration. It is so ordered.

_____
Hon. Marvin E. Aspen
U.S. District Judge

Date: April 5, 2010

---

[4] Defendants cite to *Saunders v. City of New York*, 594 F. Supp. 2d 346, 363 (S.D.N.Y. 2008), for the proposition that the CBAs themselves satisfy the notice requirement of 29 C.F.R. §516.4. (Reply at 8.) This characterization grossly misstates the case. In *Saunders*, the court denied the plaintiff's motion for summary judgment on a similar question of equitable tolling because the existence of an HR handbook mirroring the required FLSA disclosure raised a question of fact as to whether the plaintiffs knew about their FLSA rights. 594 F. Supp. 2d at 363–64. Because of this fact question, the court could not determine as a matter of law whether equitable tolling applied and left that question for trial. *Id*. Accordingly, *Saunders* does not suggest that we should deny as a matter of law Plaintiffs' equitable tolling argument, as Defendants claim. To the contrary, it supports our conclusion that it is not appropriate to decide this question at this time.

[5] We do not address whether Defendants' conduct was willful as it is unnecessary to resolve this motion. We note, however, that Plaintiffs have alleged willful conduct in the complaint. (Compl. ¶ 26).

11